## In re MINER.

(District Court, D. Oregon. May 6, 1902.)

### No. 267.

1. BANKRUPTCY—ASSIGNED CLAIMS.

Assignment of a claim against bankrupts entitles the assignee to share in the bankrupt estate, if the assignor is estopped from making the same claim.

2. SAME—RIGHT TO DISCHARGE—FALSE STATEMENTS.

Discharge will not be denied a bankrupt because he made oath that he had no money deposited anywhere, when he did have $8 deposited with one to whom he was indebted.

3. SAME.

Bad faith, depriving a bankrupt of right to discharge, will not be inferred because of slight understatements and overstatements of debts, counteracting each other.

4. SAME.

A bankrupt does not lose right to discharge because stating that he has no interest in real estate and no policies of insurance, though he has a contract to purchase land, on which a payment equal only to accrued interest has been made, and which a vendor has a right to cancel for nonperformance, and though he has a life policy on which he has made one payment, it not appearing to have any surrender value.

In Bankruptcy.

Cotton, Teal & Minor and W. C. Bristol, for creditors.

Lionel R. Webster, for Mrs. Miner.

BELLINGER, District Judge. Mrs. Miner presents a claim against her husband's estate for $2,000. This claim is made up of money loaned by claimant's father, Smith, to the bankrupt, merchandise furnished, and a note of the bankrupt to a third party paid by said Smith, upon which an account was stated in 1898, showing $2,000 due Smith, which claim and account was assigned to the claimant. The existence of these items of account, and the settlement between Smith and the bankrupt, two years prior to the proceedings in bankruptcy, are substantially proved. The creditors now object to the allowance of this claim—

"Because it affirmatively appears from the affidavit and papers composing the proof of said claim that the same are contradictory as between themselves, and that such moneys as were received by the said Miner were not received from the claimant, but from one G. W. Smith, though as to such parts of said claim as proved which are not moneys, that those parts were also received from one G. W. Smith; because it appears from Exhibit A, at-

tached to said claim, that $500 thereof is for a note to one Mrs. Uerling, and which as appears from said proof was paid by G. W. Smith, and there is no showing by said proof by the said Jennie Miner how title to this item of the claim passed to her; because there is nothing to show in said proof the relation of debtor and creditor between the bankrupt and his wife, Jennie Miner; because there is nothing to show in respect of said claim any agreement upon the part of the bankrupt to repay the moneys, the subject of claim, to Jennie Miner, his wife; because it affirmatively appears that certain items of said claim are made up of negotiable notes which the said Miner had given to third persons, or had become liable thereon, and the title to his said note to a third person, paid by said Smith, has not passed to Jennie Miner by sale or gift and indorsement; because there is no proof that the bankrupt received the money in trust for his wife, or in any other manner than for the use and benefit of either or both of them; because it appears from the testimony heretofore taken in this cause and given by the bankrupt that such moneys as are now the subject of said claim were moneys obtained and used by the bankrupt in his business for the joint use of both himself and his wife."

These objections are technical in their character. It is immaterial that the money payments entering into the claim were made by Smith, or that notes included in it were paid by Smith. If Smith had a claim, it was his to bestow upon his daughter if he saw fit. Nor is the assignment from Smith to the claimant required to be of technical strictness. All that need be shown as to that is such a state of facts as will estop Smith from making the same claim made by his daughter. Smith does not himself make any claim on account of these items, and his assignment to the claimant of the demand due him on the account stated is in the record. As to the proof that the relation of debtor and creditor existed between claimant and the bankrupt, that relation is shown by the proof of the particular demand, nor is it necessary that an agreement to pay by the bankrupt should be shown. The law implies such agreement, and, furthermore, the statement of account is sufficient proof of it. It is not required to be proved that the bankrupt received the money in trust for his wife. What he received, he received from Smith. He was Smith's debtor in the amount claimed, and this debt Smith gave to the claimant in a distribution he was making of property among certain of his children. If Smith had not made this gift, but had presented his claim on the statement of account between himself and the bankrupt, none of these objections would have been made. The condition of the estate and the rights of the other creditors are not in the least affected by the fact that the claimant, and not her father, is permitted to prove this debt. The findings and decision of the referee expunging this claim are reversed and set aside, and the claim is allowed.

Various objections are made to the bankrupt's discharge, involving charges against him of perjury, failure to keep books, and of concealing property. It is specified that in the bankruptcy proceedings he made a false oath in alleging that he had no money on deposit in any banking institutions or elsewhere, save the sum of $52 in the hands of the sheriff of Klamath county; the fact being that he had $7.76 in the hands of A. Schilling & Co. in San Francisco. Among the creditors making this objection are A. Schilling & Co., whom the bankrupt could not have hoped to deceive by the alleged false oath,

and in whose hands he could not have hoped to conceal this money. The bankrupt, being indebted to the firm, may have thought, as is argued in his behalf, that their right to apply the balance on deposit on their debt left him nothing there. These circumstances and the amount in question preclude even a suspicion of a sinister purpose on the bankrupt's part in omitting to mention this $7.76 in the alleged false oath. It is also specified that the bankrupt made a false oath before the referee that he kept a check book showing the amounts of money kept by him with said A. Schilling & Co., etc.; that he made false oaths as to his indebtedness to various persons, omitting to schedule a debt of $532.70 and one of $60; that he stated that he owed one Henry Hilp $167, whereas in truth he owed him only $121.83; that he stated his liability to Rosenthal, Feeder & Co. to be $143.93, whereas it was in fact greater than this sum by $88.46; that he gave his liability to Adams-Booth Company at $124.23, while the debt was $159.97; that he stated that he owed Anna Uerling $500, when he owed her nothing. Where the bankrupt stated his indebtedness to be less than it in fact was or omitted to schedule a debt it is charged that this was done to conceal his true financial condition from his creditors; where the statement complained of overstated the debt or included what was not a debt no motive is assigned for the alleged false oath. Where there are understatements and overstatements of debts counteracting each other, no inference is warranted that the bankrupt was trying to misrepresent the condition of his estate. There could be no adequate motive in concealing obligations which the bankrupt owed. This could not smooth his way through bankruptcy, and would, if the deception was successful, prevent his discharge as to the omitted creditors. Moreover, a debt, however scheduled, would necessarily be proved at the amount actually due. No possible advantage could be gained by misstating the amount of the debt listed, and there is nothing in the facts stated to warrant an inference of bad faith against the bankrupt.

With reference to the check book, it is explained in the bankrupt's behalf that instead of a check book he kept some blank checks, with which he preserved a memorandum of the checks drawn. The discrepancy between the averment and the fact is not material.

It is charged against the bankrupt that in his petition and schedule he stated that he had no right, title, or interest in any real estate, whereas he had an interest in real estate to the extent of $265, and that he stated he had no policies of insurance, except a policy on the merchandise in the store, although he has a policy in a life insurance company payable to his estate. As to the real estate, it seems that he had a contract of purchase of a house and lot upon which he had paid $265, being not much more than the accrued interest on the purchase price. The bankrupt testifies that in his opinion the property was not his, since it was not paid for, and it was at the option of the party with whom he had contracted to cancel the contract of purchase for nonfulfillment on the bankrupt's part. This seems to be the fact. In any event, such an opinion would not be unnatural under the circumstances, and it is a sufficient explanation of the omission complained of, when taken with the fact that the

contract of purchase was left by the bankrupt with his papers. As to the life insurance policy the bankrupt testifies that only one year's premium had been paid, and he did not know whether it had any surrender value or not. In order to justify an inference of fraud from this omission, it ought to be shown that there was reasonable ground for the belief that the policy had a surrender value, and it does not appear that in fact it had such value.

It is charged that the bankrupt valued his merchandise at $3,500, and that there is merchandise of the value of $1,614.14 unaccounted for. No other goods are found or traced than what was turned over to the trustee. The conclusion that merchandise has not been accounted for is reached by figuring up the merchandise account from different ledgers. It is one of the specifications against the bankrupt that he failed to keep books of account of the amounts of merchandise purchased and sold by him. If he did so fail to keep books, then the conclusion reached from the books as to a definite amount of merchandise unaccounted for is of no value. It seems that he did keep books of merchandise bought and sold. As to the reliableness of these books, that is another question. From these books the objecting creditors figure goods unaccounted for as stated, amounting to above $1,600, upon the basis of the invoice taken, while the bankrupt's attorney figures from the same books that the goods accounted for are of a value more than $1,700 greater than the estimate given by the bankrupt.

Upon such consideration of these objections as I have been able to give them, and of the other objections not specifically referred to, I conclude that the facts and circumstances relied upon by the objecting creditors are not sufficient to justify an inference of purpose on the part of the bankrupt to misrepresent the true condition of his affairs or to secrete any of his property. In my opinion, the objections are not sustained by the evidence, and the findings and order herein will conform to this opinion.